**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS**

DAVID TAYLOR,

      Plaintiff,

v.                                                                    Case No. 04-3256

FRED SINKHORN and
THOMAS BOESDORFER,[1]

      Defendants.

**Order**

Before the Court is the defendants' motion for summary judgment, which is denied for the reasons below.

**Summary Judgment Standard**

A party moving for summary judgment must show, from the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . ." that there is no genuine issue of material fact and that the "moving party is entitled to judgment as a matter of law. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);Fed. R. Civ. P.56©. This burden can be satisfied by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If such a showing is made, the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Outlaw*, 259 F.3d at 837. Credibility questions "defeat summary judgment only '[w]here an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility.'" *Outlaw*, 259 F.3d at 838, *citing* Advisory Committee Notes, 1963 Amendment to Fed. R. Civ. P. 56(e)(other citations omitted).

In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). The question is " . . . whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

---

[1]The other defendants were dismissed on merit review (d/e 2).

**Facts**

1. The plaintiff was incarcerated at Logan Correctional Center at all relevant times.

2. The plaintiff filed a grievance on April 30, 2003, complaining that defendant Sinkhorn had transferred the plaintiff from his job in the employee dining room side to the inmate dining side (a less preferable position). According to the plaintiff, Sinkhorn had improperly believed false accusations by other inmates that the plaintiff was not doing his work. (d/e 26, Ex. 1-A). The plaintiff requested reinstatement to his officer dining room position. The grievance was answered on June 4, 2003, with the response:

> Inmate claims that he was removed from staff side dietary job by CCFS 2 Sinkhorn for allegations of [illegible] staff sides food. Inmate claims that this was at the word of another inmate and believes that this was not a good reason. Inmate job placement is not a right, inmates may be moved from job to job per need or staff concern. CFSS 2 Tribbett claims that he was the staff member that had inmate Taylor removed from the staff side of the dietary due to not completing ordered work since he was eating.

(Def. Ex. 1-A). The grievance officer recommended denial of the grievance and the Warden concurred in this recommendation on June 9, 2003, adding a comment, "Copy to be forwarded to Ms. Tanner for her information."

3. The plaintiff avers that, "several days after submitting the grievance, I was transferred back to the inmate dining area expecting a decrease in monthly pay to $20.00 [down from $30.00]." (d/e 35, Plaintiff's Aff. ¶7).[2] The plaintiff avers he "signed an intra-dietary tranfer[sic]/referral form initiated by defendant Sinkhorn" that transferred the plaintiff to the inmate dining area and reduced his pay. (Plaintiff Aff. ¶ 36). The plaintiff says he immediately requested another transfer to "Dietary I dept.", apparently in order to avoid Sinkhorn's shift and to continue receiving the higher $30.00 salary. He says his request was approved on or about May 16, 2003. ( *Id*. at ¶ 8; Complaint, p.2).

4. After his request was granted, the plaintiff worked in Dietary I under the supervision of "CFSSII" Jones. (Plaintiff's Aff. ¶ 9).

5. On July 27, 2003, Supervisor Jones was absent, so Sinkhorn filled in as temporary supervisor over the plaintiff that day.

6. On July 27, 2003, Sinkhorn wrote a disciplinary ticket against the plaintiff for unauthorized movement, disobeying a direct order, and insolence (d/e 34, attached).The gist of the ticket accuses the plaintiff of refusing Sinkhorn's direct orders to leave the kitchen and go to

---

[2]The defendants deny this pay differential in their Answer.

the front dining room to work as a porter (a less desirable assignment), and also of arguing with defendant Boesdorfer.[3]  Sinkhorn's ticket also accused the plaintiff of saying, "I am putting your ass on paper."

    7. On July 27, 2003, Defendant Boesdorfer wrote a disciplinary ticket against the plaintiff, concerning the same incident described by Sinkhorn in his disciplinary ticket. Boesdorfer's ticket charged the plaintiff with unauthorized movement, intimidation or threats, and disobeying a direct order.  Boesdorfer's ticket states in relevant part:

> .. . Inmate Taylor was found by CFSS II to be in the back of the chow hall. Inmate Taylor was told to report to this CFSS II.  At this point inmate Taylor came towards this CFSSII in an aggressive manner and said "You didn't tell me to be a porter!"  At this point this CFSS II summoned a Lt. and requested Taylor be removed.  This CFSSII overheard the inmate say "He was going to get your asses!"  Security  removed the inmate from the chow line area.  Please remove this inmate from Dietary I.

( d/e 26, Ex. 2-A).

    8. An Adjustment Committee hearing was held on July 28, 2003.  The plaintiff was found guilty of insolence and disobeying a direct order, and he was demoted to C grade for one month and received four days of segregation.  (Def. Ex. 2).

    9.  In support of his motion for summary judgment, Sinkhorn denied issuing the plaintiff a disciplinary ticket:

> On July 27, 2003, I supervised inmate David Taylor along with many other inmates in the kitchen.  I did not issue a Disciplinary Ticket against David Taylor nor did I issue an Incident Report regarding the actions of David Taylor on July 27, 2003. . ."  (Sinkhorn Aff. ¶ 3).

    10.  After the plaintiff's production of the disciplinary ticket written by Sinkhorn (set forth in paragraph nine above), the defendants filed a response, stating that "Although it appears that Defendant Sinkhorn wrote a Disciplinary Report, the Repot [sic] was never issued to Plaintiff nor did Plaintiff receive any discipline as a result of the ticket."  (d/e 34, ¶ 3).

    11.  The parties dispute what happened to Sinkhorn's disciplinary ticket.  Logan's record officer supervisor avers that, "It is unclear how Plaintiff received a copy of this disciplinary report because it was never served or issued to the Plaintiff and Plaintiff was never intended to receive a copy of it.  The disciplinary report is not contained within the Plaintiff's master file and there is no record of Plaintiff receiving any discipline as a result of this ticket."  (d/e 34,

---

[3]Some of the copy is illegible.

Horchem Aff. ¶¶ 5-6). The plaintiff says he was served with Sinkhorn's ticket through normal procedures. He maintains that the two tickets (Sinkhorn's and Boesdorfer's) were combined into one hearing. There is support for the plaintiff's conclusion, as the adjustment committee report references an insolence charge, which was not part of Boesdorfer's disciplinary report, but was part of Sinkhorn's.

## Analysis

Acts which are constitutional become unconstitutional if done in retaliation for the exercise of a constitutionally protected right. *See DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 1999)(citations omitted). "This is so even if the adverse action does not independently violate the Constitution." Filing grievances is a protected First Amendment activity. *Johnson v. Stovall*, 233 F.3d 486, 489 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). Therefore, the purported demotions and the false disciplinary reports, though not implicating Constitutionally-protected interests by themselves, are actionable under the Constitution if done in retaliation for the plaintiff's grievance against Sinkhorn.

If Sinkhorn is believed, he did not even know about the plaintiff's grievance until this lawsuit was filed. (Sinkhorn Aff. ¶ 4). However, the grievance itself, viewed in the light most favorable to the plaintiff, arguably gives rise to an inference that Sinkhorn did know. The grievance response shows that another food supervisor (Tribbett) was contacted about the grievance, and that the grievance was forwarded to Tanner (food service manager), who, according to the plaintiff, shared an office with Battin (another food supervisor). The plaintiff maintains that "it is the normal and standard procedure for the Grievance Officer to investigate and examine the complained of staff member through actually [sic] face to face contact." He also avers that "dietary supervisors routinely gather[] in the employee dining areas prior to their work shift." (Plaintiff's Aff. ¶ 26-27). On the present record, the Court cannot rule out an inference that Sinkhorn was made aware of the grievance by Tanner, Battin, Tribbett and/or the grievance officer. There are no affidavits from these individuals, nor does Sinkhorn's affidavit address his alleged interactions with the plaintiff before July 27th. Also, the fate of Sinkhorn's disciplinary ticket, coupled with his affidavit professing its non-existence, also raises questions about Sinkhorn's credibility.[4] On this record, whether Sinkhorn knew about the plaintiff's grievance is sufficiently disputed to survive summary judgment.

Whether the retaliation claim against defendant Boesdorfer survives summary judgment is a closer question. Boesdorfer avers that he issued a disciplinary ticket against the plaintiff because the plaintiff approached him in an aggressive manner (the plaintiff disputes this). Boesdorfer further avers that he did not know about the plaintiff's grievance against Sinkhorn when he wrote the ticket, did not communicate with Sinkhorn regarding issuing a disciplinary

---

[4] Sinkhorn may well have a logical explanation (for example, he did not remember, or the ticket never "issued" though he did write it). At this stage, the Court must draw all inferences in the plaintiff's favor.

ticket against the plaintiff, and that Sinkhorn did not influence his decision to issue the disciplinary ticket. (d/e 26, Affidavit of Defendant Boesdorfer, Exhibit 2).

The plaintiff admits that he is "without personal knowledge or information sufficient to form a belief as to" whether Boesdorfer was aware of the plaintiff's grievance against Sinkhorn when Boesdorfer wrote the July 27th ticket against the plaintiff. (d/e 36, p.2, ¶ 9). The plaintiff argues, however, that Boesdorfer and Sinkhorn did communicate about the disciplinary reports before writing them. He asserts this inference arises from the disciplinary reports themselves, and puts both defendants' credibility in issue.

The court cannot conclude with certainty that Boesdorfer did not know about the plaintiff's grievance, or that Boesdorfer's disciplinary ticket was not motivated by retaliation for the plaintiff's grievance against Sinkhorn. It seems that the question turns on credibility, at least on the present record. A reasonable inference arises from the disciplinary tickets that Boesdorfer and Sinkhorn did communicate about their disciplinary tickets before writing them: they witnessed the same incident; their disciplinary tickets describe the same incident and refer to each other; and, the disciplinary tickets were written within an hour of each other. The plaintiff also avers that Boesdorfer's ticket was false. The plaintiff maintains he did not approach Boesdorfer aggressively or threaten he was going to "get their asses." The court must credit the plaintiff's version on summary judgment. All this, coupled with the unexplained disappearance of Sinkhorn's ticket, is enough from which to infer that Boesdorfer may have been a part of a plan by Sinkhorn to retaliate against the plaintiff for his grievance.

IT IS THEREFORE ORDERED THAT:

1) The defendants' motion for summary judgment is denied (d/e 25).

2) A final pretrial conference is scheduled for March 6, 2007, at 1:30 p.m., by personal appearance. The parties are directed to confer and submit the proposed final pretrial order by February 26, 2007. *See Appendix 2* to Local Rules for a sample form. www.ilcd.uscourts.gov/local rules

3) The proposed final pretrial order must include the names of all witnesses to be called, including: (1) the name, prison number, and place of incarceration for each inmate to be called as a witness; (2) an indication of which IDOC employee-witnesses will appear by video conference; and (3) the names and addresses of any witnesses who are not incarcerated for whom a party seeks a trial subpoena. The party must provide the witness fee and mileage fee to subpoenaed witnesses and is responsible for timely requesting and serving all trial subpoenas. Fed. R. Civ. P. 45.

4)  A jury trial is scheduled for April 19, 2007, at 9:00 a.m. at the U.S. Courthouse, 201 S. Vine St., Urbana, Illinois, by personal appearance. Inmates of the Illinois Department of Corrections who are not parties to this case shall appear by video conference.  IDOC employees who are not parties may appear by video conference.

Entered this 24th day of <u>August</u>, 2006.

>                               **s\Harold A. Baker**
>                               _____
>                                   HAROLD A. BAKER
>                               UNITED STATES DISTRICT JUDGE